PENNSYLVANIA COMPANY *v.* COYER, ADMINIS-
TRATRIX.

[No. 20,411. Filed December 13, 1904.]

DEATH BY WRONGFUL ACT.—*Complaint.*—*Pecuniary Injury to Next of Kin.*—
In a complaint for damages by an administrator for the death of his
decedent by wrongful act, it is not necessary under §285 Burns 1901
(Acts 1899, p. 405) to allege the pecuniary interest of the widow, wid-
ower, children or next of kin in the life of the decedent, the better
practice being to name the persons for whom suit is maintained and
their relationship to the decedent.   *pp. 633–635.*

RAILROADS.— *Work Train.*—*Allowing Person to Ride in Caboose.*—*Liability.*—
If in an action by an administrator for the death of his decedent by
wrongful act, it is alleged in the complaint that decedent was not an
employe of the defendant railroad company, but was in the habit of
riding upon the work train of said defendant with the knowledge and
consent of such company, to be carried to his home, such complaint is
sufficient to show that the defendant must at least exercise ordinary
care for his safety.   *pp. 635, 636.*

TRIAL.—*Interrogatories.*—*Conflict with General Verdict.*—*Evidence Admissi-
ble.*—Where evidence might have been introduced under the issues
which would render the answers to the special interrogatories consist-
ent with the general verdict, such answers will not be held in irrecon-
cilable conflict therewith.   *p. 636.*

RAILROADS.— *Work Train.*—*Allowing Person to Ride in Caboose.*—*Liability.*—
*Rules of Company.*—Where, in an action by an administrator for dam-
ages for the death of his decedent by the wrongful act of the defendant
railroad company, the evidence showed that decedent was employed by
an independent contractor in the construction of a track for defendant;
that a rule of defendant issued by the general superintendent forbade
any one, not an employe of its work train, from riding thereon; that
decedent knew of this rule; that with the conductor's knowledge and
consent he did nevertheless ride thereon; that the general superintend-
ent did not know of decedent's riding on such train and that such riding
did not occur under such circumstances as to raise a presumption that
such order had been disregarded and acquiesced in by such company,
such evidence fails to show a cause of action, since the law does not im-

pose on a railroad company the duty of a constant surveillance over its employes to see whether they enforce its rules, and such company has the right to assume that its rules will be enforced. *pp. 637, 638.*

TRIAL.—*Instruction.—Presumption that a Person is on a Train Rightfully.*— In an action by an administrator against a railroad company for damages for the death of his decedent by reason of negligence of the crew of a work train on which decedent was riding, an instruction containing the proposition " that a person found upon a train, whether it be a passenger, freight or work train, is presumed to be there rightfully," is erroneous, since such presumption does not obtain as to work trains or other non-passenger-trains. *pp. 639-642.*

From Porter Circuit Court; *W. C. McMahan,* Judge.

Action by Delphine Coyer as administratrix of the estate of Charles Coyer, deceased, against the Pennsylvania Company for damages for the death of her decedent. From a judgment for plaintiff rendered upon a verdict for $1,650, the defendant appeals. Transferred from the Appellate Court under §1337u Burns 1901 (Acts 1901, p. 590, §1). *Reversed.*

*Allen Zollars* and *F. E. Zollars,* for appellant.
*T. H. Heard, J. O. Bowers* and *Frank May,* for appellee.

DOWLING, C. J.—Action by the appellee, as administratrix of the estate of Charles Coyer, deceased, against the appellant, the Pennsylvania Company, for damages for a personal injury resulting in the death of Coyer. Demurrer to each paragraph of complaint overruled. Answer in denial. Trial by a jury. Verdict for appellee, with answers to interrogatories. Motion for judgment on special answers, and for a new trial overruled. Judgment on verdict. All questions discussed in brief of counsel for appellant are properly presented by the assignment of errors.

The complaint charged that the death of Charles Coyer, appellee's decedent, was caused by the wrongful act and omission of the appellant. Each of its three paragraphs alleged, among other things, that Coyer, an employe of a firm engaged in the construction of a second track for ap-

pellant, "after working hours, * * * as had been his custom, and with the consent of defendant company, did go upon and board defendant's work train, * * * and with the knowledge and consent of the defendant and its employes in charge of said train did climb in and upon the caboose of said work train * * * for the purpose of being carried to his home in the city of Plymouth; * * * that the said Charles Coyer was twenty years old, strong, active, able-bodied, and intelligent, and capable of earning $90 per month, and did so long before and at the time of his death; that * * * more than a year prior to his death he was fully emancipated and given his time by his mother (a widow), and allowed to do business for himself; that he used and did as he pleased with his wages, and collected and received the value of his services; * * * that the said Charles Coyer * * * died intestate, leaving as his only heirs at law and next of kin his mother Delphine Coyer, and his brothers, Peter Coyer, William Coyer, and George Coyer, and his sisters, Emma Carter, Neoma Coyer, and Ida Coyer."

The first objection to the complaint by counsel for appellant is that it does not show that the next of kin suffered any injury for which the law will award damages. The action is founded upon §285 Burns 1901, which authorizes the personal representative of one whose death is caused by the wrongful act or omission of another to maintain an action therefor in certain cases, and which provides that the damages must inure to the exclusive benefit of the widow or widower (as the case may be) and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased. It has never been held in this State that the complaint must show the fact that the widow, widower, children, or next of kin of the deceased had a pecuniary interest in his life, or the nature or extent of that interest.

This court said in the case of the *Indianapolis, etc., R. Co.* v. *Keeley* (1864), 23 Ind. 133, 136, 137: "In New York, under a statute conferring the same right of action on the personal representatives of the deceased person, and 'the sum recovered to be for the exclusive benefit of the widow and next of kin,' it has been held that the complaint should show that 'there are persons entitled by law to claim the indemnity,' and that their names should be stated. *Safford* v. *Drew* [1854], 3 Duer (N. Y.) 627. The New York statute may furnish one reason why the persons entitled to the damages recovered should be named in the complaint, that does not exist under our statute, in this: the statute of New York provides that 'the jury may give such damages as they shall deem a fair and just compensation, not exceeding $5,000, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of the deceased person.' A different rule seems to prevail under our statute. See *Long v. Morrison* [1860], 14 Ind. 595. In view, however, of the whole question, we think the better rule of practice requires that the names of the persons and their relation to the deceased should be stated in the complaint. It imposes no hardship on the plaintiff, and only requires to be stated in the complaint the facts that must be proved on the trial to justify a recovery."

Again, in the *Jeffersonville, etc., R. Co.* v. *Hendricks* (1872), 41 Ind. 48, 77, this court said: "We are of the opinion that it will be sufficient to allege in the complaint, and prove on the trial, that there are persons who are entitled, under the statute, to the damages. We hold that it is not necessary to give the names of such persons in the complaint, but such allegation would not vitiate."

It was averred in the complaint under review that the deceased was unmarried, that he died intestate; and that he left surviving him, as his heirs at law and next of kin, his mother and brothers and sisters, naming each of them.

This was a sufficient allegation of interest in the life of the deceased in the persons so named and described, and it authorized proof of such pecuniary loss as the persons so related sustained by his death. This view seems to be entirely in harmony with the authorities. *Stewart* v. *Terre Haute, etc., R. Co.* (1885), 103 Ind. 44; *Louisville, etc., R. Co.* v. *Goodykoontz* (1889), 119 Ind. 111, 12 Am. St. 371; *Commercial Club* v. *Hilliker* (1898), 20 Ind. App. 239, 242, 243; *Salem-Bedford Stone Co.* v. *Hobbs* (1894), 11 Ind. App. 27; *State, ex rel.,* v. *Walford* (1894), 11 Ind. App. 392; *Conant* v. *Griffin* (1868), 48 Ill. 410; *McGlone* v. *New Jersey R., etc., Co.* (1875), 37 N. J. L. 304; *Keller* v. *New York Cent. R. Co.* (1861), 24 How. Pr. 172; 5 Ency. Pl. and Pr., 868-870; *Cincinnati, etc., R. Co.* v. *Carper* (1887), 112 Ind. 26, 2 Am. St. 144 and notes; *Alabama, etc., R. Co.* v. *Yarbough* (1887), 83 Ala. 238, 3 South. 447, 3 Am. St. 715.

It is next contended that the complaint does not show that Coyer was a passenger, nor that he was otherwise rightfully upon the train, so as to make appellant liable upon the ground of negligence. It does appear that he was not an employe of the appellant, and the averment is that he was in the habit of riding upon the train, and was in the caboose with the knowledge and consent of the defendant company for the purpose of being carried to his home. If he was on the work train with the knowledge and consent of the appellant for this purpose, he was neither a trespasser, a licensee, nor a servant of the company. Although he paid no fare, he was a person carried gratuitously, and the appellant was bound to exercise at least ordinary care for his safety. *Gillenwater* v. *Madison, etc., R. Co.* (1854), 5 Ind. 339, 61 Am. Dec. 101; *Louisville, etc., R. Co.* v. *Taylor* (1890), 126 Ind. 126, 130; *Cleveland, etc., R. Co.* v. *Ketcham* (1893), 133 Ind. 346, 36 Am. St. 550, 19 L. R. A. 339; *Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 17 Am. Rep. 719; *Ohio, etc., R. Co.* v. *Nickless*

(1880), 71 Ind. 271; *Rosenbaum* v. *St. Paul, etc., R. Co.* (1888), 38 Minn. 173, 8 Am. St. 653, 34 Am. & Eng. R. Cas. 274; *St. Joseph, etc., R. Co.* v. *Wheeler* (1886), 35 Kan. 185, 10 Pac. 461, 26 Am. & Eng. R. Cas. 173; *Chicago, etc., R. Co.* v. *Frazer* (1895), 55 Kan. 582, 40 Pac. 923; *Keating* v. *Michigan Cent. R. Co.* (1893), 97 Mich. 154, 56 N. W. 346, 37 Am. St. 328; *Lawrenceburgh, etc., R. Co.* v. *Montgomery* (1856), 7 Ind. 474; *Ohio, etc., R. Co.* v. *Dickerson* (1877), 59 Ind. 317; *Ohio, etc., R. Co.* v. *Muhling* (1861), 30 Ill. 9, 81 Am. Dec. 336; *Hazard* v. *Chicago, etc., R. Co.* (1865), 1 Biss. (U. S.) 503; *Fitzpatrick* v. *New Albany, etc., R. Co.* (1856), 7 Ind. 436; *Lake Shore, etc., R. Co.* v. *Brown* (1887), 123 Ill. 162, 5 Am. St. 510; *McGee* v. *Missouri Pac. R. Co.* (1887), 92 Mo. 208, 4 S. W. 739, 1 Am. St. 706. The demurrer to the complaint was properly overruled.

While many of the special answers of the jury were apparently antagonistic to the general verdict, they were not irreconcilable with it. Evidence might have been introduced under the issues which would have rendered them consistent with the conclusion that the appellee was entitled to recover upon the pleadings. *Princeton Coal, etc., Co.* v. *Roll* (1904), 162 Ind. 115; *Albany Land Co.* v. *Rickel* (1904), 162 Ind. 222, 228.

Did the court err in overruling appellant's motion for a new trial? One of the reasons assigned for the motion was that the verdict was not sustained by sufficient evidence. It will not be necessary to set out or consider the evidence in detail, as we think there was a failure of proof upon a vital point, which must cause a reversal of the judgment. The complaint, as we have seen, alleged that Coyer, with the consent of the appellant, went upon the work train with the permission of appellant's servants in charge of said train, the custom being to convey Coyer and other employes of P. T. Clifford & Sons, the contractors, to and from their work.

It was proved without contradiction that a rule of the appellant expressly prohibited the employes of P. T. Clifford & Sons from riding on the work train without the special permission of the superintendent, and it was shown that notice of the existence of this rule was given to Coyer sometime in the year 1900, and within one year before the occurrence of the collision by which he was killed. Work trains are not ordinarily intended for the transportation of passengers, and it is a generally recognized fact that the perils of accident are much greater on such trains than on those designed and commonly used for the conveyance of passengers. A railroad company has the right and the strongest reason to protect itself against the dangerous liability likely to arise from accidents to such trains, by altogether excluding passengers from them; and the most reasonable and effective method of accomplishing this result would seem to be the adoption and promulgation of a rule prohibiting all persons from riding on work trains. When such a rule is made, and notice is given to the persons intended to be excluded from the train or trains, it is not necessary that these persons should afterward be reminded of the existence of the rule. After notice that they are not permitted to ride on such trains, if they violate the rule, they do so at their own risk, and, if injured by an accident to the train, ordinarily there can be no recovery. Disregard of the rule and a failure to enforce it by the conductor or other persons having charge of the train will not render the company liable for an accidental injury. All persons are required to take notice of the fact that work trains are not intended for the transportation of passengers, and persons traveling on them, if injured and seeking damages, must show that they were rightfully there, and that the company owed them the duty of carrying them safely. Much more, after express notice of a rule of the company prohibiting them from riding on such trains, is it incumbent on them, if they seek to make the company responsible

for an injury, to show by clear and satisfactory evidence that the rule had been abrogated, and that the plaintiff was rightfully on the train. Nothing of the kind appears in the present case. There was proof that the persons in charge of the work train violated the rule prohibiting the employes of P. T. Clifford & Sons from riding on the cars, but there was no evidence that such disregard of the rule, whether occasional or habitual, was known to the appellant, or that it occurred under such circumstances as to raise a presumption of knowledge of such disregard of the order and acquiescence of the appellant in it. On the contrary, the evidence that the company had no such knowledge was uncontradicted. No rule of law imposes upon a railroad corporation the duty of maintaining a constant surveillance over its employes to ascertain whether or not its rules are complied with. It has the right to assume that they will be observed and enforced, and it is rarely the case that notice of a habitual disregard of such rules and acquiescence in such breach of duty can justly be presumed from evidence that violations of the rules have occurred, or have been connived at by faithless servants. *Murray* v. *Fry* (1855), 6 Ind. 371; *Rapp* v. *Kester* (1890), 125 Ind. 79; *Streets* v. *Grand Trunk R. Co.* (1902), 78 N. Y. Supp. 729; *Springer* v. *Byram* (1894), 137 Ind. 15, 23 L. R. A. 244, 45 Am. St. 159; *Cooper* v. *Lake Erie, etc., R. Co.* (1894), 136 Ind. 366; *Evansville, etc., R. Co.* v. *Barnes* (1894), 137 Ind. 306; *Smith* v. *Louisville, etc., R. Co.* (1890), 124 Ind. 394; *White* v. *Evansville, etc., R. Co.* (1893), 133 Ind. 480; *Lake Shore, etc., R. Co.* v. *Foster* (1885), 104 Ind. 293, 316, 54 Am. Rep. 319; *Stalcup* v. *Louisville, etc., R. Co.* (1897), 16 Ind. App. 584.

Many of the instructions given by the court are complained of as erroneous. The nineteenth was in these words: "It is charged in the complaint that while said Charles Coyer worked for P. T. Clifford & Sons upon the

right of way of the defendant company west of Plymouth, the defendant company provided and furnished to him and other employes working for said Cliffords transportation between Plymouth and said work upon its cars and trains; that upon the invitation and consent of the defendant company said Charles Coyer went upon and aboard one of the defendant's work trains to be carried from the work to Plymouth; that he had a right to do so; and that while on one of said work trains he was killed by the negligence of the employes handling that train, and another train with which it collided. The simple fact that Charles Coyer was killed upon one of the work trains belonging to the defendant and being operated by its employes does not show, nor tend to show, that said Coyer was by the defendant invited to be upon said train. Nor will the simple facts that Charles Coyer was killed while at work upon a train of the defendant, which was operated by its employes, alone prove, nor tend to prove, that he was upon that train with the consent or knowledge of the defendant. But the court instructs the jury that a person found upon a train, whether it be a passenger, freight, or work train, is presumed to be there rightfully." The latter part of this instruction, namely, "that a person found upon a train, whether it be a passenger, freight, or work train, is presumed to be there rightfully," is not a correct declaration of the rule of law in such cases. It is said in Elliott, Railroads, §1578: "The presumption that a person on a train is a passenger does not prevail in cases where the train is one on which passengers are not ordinarily carried, as, for instance, a construction train, an oil train or the like. It has been held, and in our opinion justly so held, that a person in the caboose of a freight-train can not be presumed to be a passenger, but it may, of course, be shown that passengers were carried on such train." *Eaton* v. *Delaware, etc., R. Co.* (1874), 57 N. Y. 382, 389, 15 Am. Rep. 513; *Atchison, etc., R. Co.* v.

*Headland* (1893), 18 Colo. 477, 33 Pac. 185, 20 L. R. A.
822, 8 Am. R. & Corp. Rep. 105 ; *White* v. *Evansville, etc.,*
*R. Co.* (1893), 133 Ind. 480, 486.

*Graham* v. *Toronto, etc., R. Co.* (1874), 23 U. C. C. P.
541, cited by the court in *Hoar* v. *Maine Cent. R. Co.,*
70 Me. 65, 35 Am. Rep. 299, is much in point upon the
question we are now considering.   There the defendants
agreed with the contractor for the construction of their
railway to furnish a construction train for ballasting and
laying the track for a portion of their road then under con-
struction ; the company to provide the conductors, engineer,
and fireman ; the contractors to furnish the brakemen.   On
October 31, 1872, after work for the day was over, and
the train was returning to Owen Sound where the plaintiff,
one of the contractor's workmen, lived, the plaintiff, with
the permission of the conductor, but without the authority
of the defendant, got on.   Through the negligence of the
person in charge of the train an accident happened, and
the plaintiff was injured.   In deciding the case, Hogarty,
C. J., said: "The fact that the defendants' engine driver
or conductor allowed them to get on the platform does not,
in my view, alter the case.   I can not distinguish it from
the case of a cart sent by its owner under his servant's care
to haul bricks or lumber to a house he is building.   A
workman, either with the driver's assent, or without any
objections from him, gets upon the cart.   It breaks down,
or by careless driving runs against another vehicle, or a
lamppost, and the workman is injured.   I can not under-
stand by what process of reasoning the owner can in such
case be held to incur any liability to the person injured.
Nor, in my opinion, would the fact that the owner was
aware that the driver of his cart often let a friend or a per-
son doing work at his house drive in the cart, make any
difference.   *   *   *   It never could, I think, be in the
reasonable contemplation of these defendants, that they
were incurring any liability as carriers of passengers, or

Pennsylvania Co. v. Coyer.

that they should have to provide against contingencies that might affect them in that character."

A similar question arose in *Sheerman* v. *Toronto, etc., R. Co.* (1874), 34 U. C. Q. B. 451, where one of the workmen was being carried, without reward, on a gravel train, and was injured so that he died. It was held that the deceased was not lawfully upon the car with the consent of the defendant, and a nonsuit was directed. "The workmen," observes Wilson, J., "were not lawfully on the cars. They were not passengers being carried by the defendants. They were acting at their own risk—not at the risk of the defendants; and, however unfortunate this disaster may have been, it is only right the legal responsibility should fall on those who ought to bear it, and not upon those on whom it does not rest." In this case it appeared that it was not necessary that the defendants should carry the men to and from their work, and that they never agreed to do more than to provide cars for carrying ballasting and material for track laying. No one becomes a passenger except by the consent, express or implied, of the carrier.

In *Duff* v. *Allegheny Valley R. Co.* (1879), 91 Pa. St. 458, 36 Am. Rep. 675, the facts were that the conductor of an accommodation train, at the request of a brakeman, permitted a lad of fifteen to ride free, daily, on the train to sell newspapers. Under the company's rules this was beyond the scope of the conductor's authority. After this practice had continued five or six months, the boy was killed in an accident to the train (caused by the alleged negligence of the company). In an action by the boy's mother to recover damages, it was held that, under the evidence, the boy was neither a passenger nor an employe, but was a mere trespasser, to whom the company owed no duty, and that the plaintiff could not recover. *Springer* v. *Byram* (1894), 137 Ind. 15, 27, 23 L. R. A. 244, 45 Am. St. 159; Elliott, Railroads, §1580.

Other errors are discussed by counsel for appellant, but we do not deem it necessary to consider them. Many of them relate to instructions given by the court upon the subject of the rights acquired by the deceased by reason of the fact that, when injured, he was traveling on the train of the appellant. Our views upon this branch of the case have been fully stated elsewhere in this opinion, and need not be repeated. So far as the instructions given conflict with them, they must be condemned.

For the error of the court in overruling the motion for a new trial the judgment is reversed, with direction to the court to sustain the motion, and for further proceedings not inconsistent with this opinion.

Gillett, J., did not participate in this decision.